IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02057-WYD

JUAN VELASQUEZ,

      Applicant,

v.

WARDEN FAULK, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      This matter is before me on the *pro se* Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 6) ("Application") filed by Applicant Juan

Velasquez.

### I.  Background

      A jury convicted Velasquez of attempted first degree murder and
first degree assault.  His convictions arose from an incident in which he
stabbed the victim with a knife while sitting behind him on a motorcycle.
The trial court also found Velasquez to be a habitual criminal and imposed
two concurrent ninety-six-year sentences.  Velasquez moved pro se for a
new trial pursuant to Crim. P. 33(c), arguing ineffective assistance of
counsel and other matters.  The trial court denied the motion.  On direct
appeal, a division of this court affirmed his convictions in *People v.
Velasquez*, (Colo. App. No. 03CA2449, Nov. 9, 2006) (not published
pursuant to C.A.R. 35(f)).

      Velasquez subsequently sought relief pursuant to Crim P. 35(c),
arguing he was denied a jury trial on the habitual criminal counts and he
received ineffective assistance of counsel, but based on different
allegations than contained in his motion under Crim. P. 33(c).  The trial
court denied his motion.

*People v. Velasquez*, No. 07CA1796, 1-2 (Colo. App. Jan. 15, 2009).

In Case No. 07CA1796, the Colorado Court of Appeals (CCA) affirmed the denial in part, reversed in part, and remanded for an evidentiary hearing on Applicant's ineffective assistance of counsel claim regarding a failure to investigate and raise the voluntary intoxication defense. *Id.* at 11. After the remand hearing, the trial court again denied the Rule 35(c) postconviction motion and the CCA affirmed. Applicant petitioned for certiorari review and, according to Respondents, which Applicant does not deny, the Colorado Supreme Court (CSC) has yet to rule on the petition. Applicant then commenced this action on August 6, 2012, and filed an Amended Application on September 4, 2012. In the Amended Application, Applicant asserts:

(1) Denial of a right to conflict free counsel;

(2) Lack of sufficient evidence to support a charge of attempted first degree murder;

(3) Lack of a sufficient indictment resulting in the inability to prepare a defense;

(4) Lack of sufficient evidence to prove habitual criminal counts;

(5) Disproportionate sentence;

(6) Prosecutorial misconduct;

(7) Ineffective assistance of trial counsel because

(a) Counsel coerced Applicant not to testify;

(b) Counsel failed to raise an affirmative defense of voluntary intoxication;

(c) Counsel failed to conduct a reasonable investigation and interview witnesses in support of a voluntary intoxication defense;

(d) Counsel failed to object to the prosecution's
misstatements of law and misconduct in
closing and rebuttal arguments; and

(e) Cumulative error; and

(8) Denial of a right to jury trial on habitual criminal findings.

On February 1, 2013, I dismissed Claim Three as procedurally barred from federal habeas review and ordered Respondents to file an Answer.  Respondents filed an Answer, ECF No. 21, on March 21, 2013.  Applicant did reply to the Answer.  After reviewing the file, including the Application, the Answer, and the state court record, I conclude that the Application should be denied and the case dismissed with prejudice for the following reasons.

## II.  Legal Standard

### A.  *Pro Se* Standard of Review

Applicant is proceeding *pro se.*  I, therefore, "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  An applicant's pro se status does not entitle him to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002).

**B.  28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court,

unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant

to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case sub judice.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.

In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general

> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation

marks and citation omitted).  I "must determine what arguments or theories supported or

. . . could have supported[ ] the state court's decision" and then "ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* "Even a

strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not

a substitute for ordinary error correction through appeal." *Id.* (citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a
> federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.  Applicant bears the burden of proof under § 2254(d).

*See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . ." [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning"). Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. Although *Richter* concerned a state-court order that did not address any of the defendant's claims, its presumption is applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094-98 (2013).

In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore,

I "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* Likewise, I apply the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the petitioner as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  Analysis

**A.  Claim One**

In his first claim, Applicant asserts that he was denied his right to conflict free counsel. Applicant specifically asserts that trial counsel refused to invoke his speedy trial rights under the Uniform Mandatory Disposition of Detainers Act (UMDDA) in violation of his right to conflict free counsel under the Sixth Amendment. Application at 5. Applicant contends that after he was arrested, charged, and appointed counsel he was transferred to the Colorado Department of Corrections because of a parole violation. *Id.* Applicant further contends when he informed counsel that he wished to exercise his ninety-day speedy trial right under the UMDDA counsel told him that he was unprepared for trial, because he had not interviewed witnesses or taken any other

action in the case. *Id.* Counsel further told Applicant that he would have to waive his speedy trial rights, but if Applicant wished to proceed he would have to do so on his own. *Id.* Finally, Applicant asserts that the trial court found counsel was not ineffective and new counsel was not required because the situation was no more than a disagreement between Applicant and counsel. *Id.*

Applicant does not argue how established federal law might support a possible conflict of interest claim or how the state court decision rejecting his conflict of interest claim is contrary to, or an unreasonable application of, any clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

It was clearly established when Applicant was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Ordinarily, a litigant asserting a claim that counsel was ineffective must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002).

In addressing this claim, the CCA found as follows.

### I. Requests for Substitute Counsel

Defendant first contends that, in violation of his constitutional rights, the trial court abused its discretion by denying his requests for substitute appointed counsel. He states that he explicitly requested new counsel, and argues that the court did not make sufficient inquiry into his reasons for dissatisfaction. We discern no abuse of discretion.

An indigent defendant is entitled to effective representation, though not to counsel of his or her choice. *People v. Jenkins*, 83 P.3d 1122, 1125 (Colo. App. 2003). However, once a defendant voices his or her objections to court appointed counsel, the trial court must inquire into the defendant's reasons for dissatisfaction. *People v. Fisher*, 9 P.3d 1189, 1193 (Colo. App. 2000). If the defendant meets his or her burden of showing good cause, for example by showing a conflict of interest or a complete breakdown of communication, then the trial court must appoint substitute counsel. *People v. Jenkins*, *supra*, 83 P.3d at 1126.

But if the court determines that the attorney-client relationship has not deteriorated beyond the point where counsel could provide effective assistance, then the court may refuse to appoint new counsel. The court's ruling will not be disturbed absent an abuse of discretion. *People v. Jenkins supra*, 83 P.3d at 1126.

Here, defendant requested new counsel twice before trial, complaining of a breakdown in communication. Contrary to defendant's assertions, our review of the record shows that upon both of defendant's requests, the court's inquiry was adequate.

Specifically, the record reveals that upon defendant's first request, the court scheduled and then held a hearing to inquire into defendant's reasons for dissatisfaction. The court asked defense counsel, the People, and defendant for their perspectives on defendant's request. Defense counsel told the court that defendant had indicated he did not trust counsel or believe in his legal advice. He stated that he was in an awkward position because defendant's lack of trust had resulted in the breakdown of communication.

When the court asked defendant for his perspective, he stated: "Well, I just don't feel that [defense counsel] is working in my best interests and we don't really have -- we don't see eye to eye and I would like different counsel."

After further discussion, the court addressed the issues raised by defendant. Although defendant did not refer to his previous waiver of speedy trial or his pro se petition under the Uniform Mandatory Disposition of Detainers Act (UMDDA) at the hearing on his motion, the court nevertheless addressed those issues because defendant had previously mentioned them to the court. The court found that defendant's speedy trial and UMDDA arguments did not demonstrate a complete breakdown of communication because defense counsel did not know of defendant's intention to invoke the UMDDA and because defendant's speedy trial waiver was voluntary. Moreover, the court concluded:

The court finds the state of the record at this time
establishes that this is simply -- strike that that this is a
disagreement between the defendant and [defense counsel]
concerning matters and there has been no specific showing
in this court's view of good cause shown to substitute
counsel. Therefore the motion is denied.

Defendant renewed his request for a new attorney on the date trial
was scheduled to begin. The court again directly asked defendant why he
was dissatisfied with his court-appointed counsel. Defendant explained
that he believed his attorney was ineffective because he had not
interviewed a potential witness.  He also stated that he thought his
attorney was not acting in his best interests when the attorney advised him
to waive his speedy trial rights. He said he felt misled.  Then, in "making
an inquiry of [defense counsel]," the court questioned defense counsel on
the issues raised by defendant. The court then again denied defendant's
motion for appointment of substitute counsel.

In light of the court's questions, its interview with counsel,
defendant's responses, and the information already before the court each
time defendant requested substitute counsel, we are satisfied that the
court adequately inquired into the reasons for defendant's dissatisfaction,
including the issues of his speedy trial waiver, his UMDDA petition, and his
lack of trust in defense counsel. Furthermore, notwithstanding defense
counsel's statement that there was a breakdown in communication, the
court's determination that the relationship had not deteriorated to the point
of a complete breakdown has record support.  *See People v. Arguello*,
772 P.2d 87, 94 (Colo. 1989) (right to counsel does not necessarily
include meaningful attorney-client relationship); *People v. Hodges*, 134
P.3d 419, 425-26 (Colo. App. 2005) (*cert. granted* Apr. 24, 2006)
(animosity between defendant and counsel does not require appointment
of new counsel); *People v. Garcia*, 64 P.3d 857 (Colo. App. 2002) (conflict
between defendant and counsel amounted to disagreement over strategy,
which does not require new counsel).

*People v. Velasquez*, No. 03CA2449, 1-5 (Colo. App. Nov. 9, 2006).

As stated above, Applicant bears the burden of proof under § 2254(d).

*Woodford*, 537 U.S. at 25.  Applicant fails to demonstrate he is entitled to relief because

he fails to identify any clearly established federal law providing that an unconstitutional

conflict of interest exists under the circumstances he alleges.  In the conflict of interest

context, the Supreme Court has noted that it is an open question whether the exception to *Strickland* for cases of actual conflicts of interest extends to conflicts of interest that do not involve multiple or concurrent representation by counsel.  *See Mickens*, 535 U.S. at 176.

Applicant does not allege any conflict of interest premised on either multiple or concurrent representation by counsel and he fails to identify any other clearly established federal law to support his conflict of interest claim.  The Court reiterates that clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.  Furthermore, clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  *House*, 527 F.3d at 1016.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.  *Id.*

The absence of any clearly established federal law ends the Court's inquiry under § 2254(d)(1).  *See House*, 527 F.3d at 1018.  Therefore, the Court finds that Applicant is not entitled to relief on the conflict of interest claim and Claim One will be dismissed for lack of merit.

## B.  Claim Two

In this claim, Applicant asserts that the prosecution provided insufficient evidence to support a charge of attempted first degree murder and failed to meet the required burden of proof of intent and after deliberation under Colo. Rev. Stat. § 18-3-102(1)(a). Application at 6.

A habeas applicant's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in the original). A court considers both direct and circumstantial evidence in determining the sufficiency of the evidence. *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998). The court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, a court looks to state law to determine the substantive elements of the offense. *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). Under Colorado law, a person is guilty of first degree murder under § 18-3-102(a) when "after deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person."

In addressing this claim, the CCA found as follows.

## II. Sufficient Evidence of Deliberation

Defendant next contends that the evidence was insufficient to support his conviction for attempted first degree murder. Specifically, he contends that there was insufficient evidence of deliberation. We disagree.

A review of a claim of insufficient evidence requires an appellate court to consider whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. *People v. Frye*,

13

898 P.2d 559, 569 (Colo. 1995).  The court is to view the evidence in the light most favorable to the prosecution, *People v. Bennett*, 183 Colo. 125, 132, 515 P.2d 466, 469 (1973), and may not sit as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion from the same evidence.  *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999).

A person commits first degree murder if "[a]fter deliberation and with the intent to cause the death of a person other than himself [or herself], he [or she] causes the death of that person or of another person."  Section 18-3-102(1)(a), C.R.S. 2006.  Thus, to convict a person of attempt to commit first degree murder, the People must prove beyond a reasonable doubt that the defendant acted "after deliberation and with the intent to cause death."  *See* § 18-2-101, C.R.S. 2006 (attempt requires same mental state as underlying offense).

For purposes of first degree murder, "after deliberation" means "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act.  An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." Section 18-3-101(3), C.R.S. 2006.  Although deliberation requires that a design to kill precede the killing, the time required for deliberation need not be long.  *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo. 1983).

Moreover, deliberation must often be proved through circumstantial or indirect evidence.  *People v. Parsons*, 15 P.3d 799, 806 (Colo. App. 2000).  Such evidence may include the use of a deadly weapon, *see, e.g., People v. Parsons, supra*, 15 P.3d at 806; the manner and method of the attempted killing, *People v. Webster*, 987 P.2d 836, 843 (Colo. App. 1998); and any enmity, hostility, jealousy, or other manifestation of ill will between the accused and the victim, *People v. Madson*, 638 P.2d 18, 26 (Colo. 1981).  Thus, the circumstances surrounding a victim's death may permit a reasonable inference that the defendant was able to deliberate committing the act before its commission.  *People v. Parsons*, supra, 15 P.3d at 806.

Here, the jury could rationally infer that defendant had a premeditated plan to kill the victim using another person's assistance.  Specifically, the evidence was that defendant brought a knife with him and began stabbing the victim while sitting behind him on a motorcycle they were riding.  The victim testified that defendant began the attack only after a car occupied by someone who was familiar to defendant approached the motorcycle, at which point defendant had asked the victim to slow down.

He further testified that this other person assisted defendant in the attack by dragging the victim's body into a ditch after the stabbing.

Additionally, the victim testified that during the attack he pleaded with defendant to stop, saying, "Not worth it, you take the bike. You can have the bike. You don't have to do this." He said defendant replied, "Die," or "I'm going to kill you," which he repeated several times. *See People v. Madson, supra*, 638 P.2d at 26 (deliberation may be inferred from the defendant's hostility towards the victim).

*Velasquez*, No. 03CA2449 at 5-8.

The state court's factual findings, which are presumed correct in a federal habeas proceeding, are supported by the state court record, *Velasquez*, No. 02CR2048, Tr. Trans. 7-8-03 and 7-9-03, and are uncontested by Applicant. The CCA's reliance on *People v. Frye*, 898 P.2d 559, 569 (Colo. 1995), and *People v. Bennett*, 515 P.2d. 466, 469 (1973), is in keeping with the *Jackson* standard because the CCA, viewing the evidence in a light most favorable to the prosecution, determined that a rational jury could have concluded Applicant had a premeditated plan to kill the victim and acted with deliberation and an intent to cause the victim's death. I, therefore, find the CCA's determination was consistent with federal law because there was sufficient evidence presented at Applicant's trial to support his conviction for attempted murder in the first degree.

Based on the above findings, the CCA decision regarding Applicant's sufficiency of the evidence claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim, therefore, lacks merit and will be dismissed.

### C.  Claim Four

In this claim, Applicant asserts the prosecution failed to establish beyond a reasonable doubt he was the person who committed any of the identified prior offenses that were used to determine he was a habitual criminal.  Application at 7.

As in Claim Three, *Jackson* provides the relevant federal law.   The CCA addressed this claim as follows:

> IV. Sufficient Evidence that Defendant was an Habitual Criminal
>
> Defendant contends that his adjudication as an habitual offender must be vacated because the prosecution failed to provide sufficient evidence that he is the same Juan Velasquez who received the attempted vehicular eluding conviction. He also argues that the prosecution failed to provide sufficient evidence that the second degree burglary and criminal trespass convictions were separate and distinct criminal episodes.  Thus, he claims, the prosecution only proved he was the person convicted of second degree assault, and therefore he did not have the requisite number of prior convictions to establish habitual offender status. We disagree with each of defendant's arguments.
>
> As discussed, a challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the People, is sufficient to support a conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt.  The People must be given the benefit of every reasonable inference that might fairly be drawn from the evidence.  *People v. Barker*, 713 P.2d 406, 407-08 (Colo. App. 1985).
>
> To adjudicate a defendant as an habitual criminal, the prosecution must prove beyond a reasonable doubt that the accused is the person named in the prior convictions.  *People v. Kyle*, 111 P.3d 491, 504 (Colo. App. 2004). In habitual criminal proceedings, a duly authenticated copy of the record of former convictions is prima facie evidence of such convictions. Section 18-1.3-802, C.R.S. 2006.  Also, "[i]dentification photographs and fingerprints that . . . are part of the records kept . . . by any custodian authorized by the executive director of the department of corrections after sentencing for any such former convictions and judgments, shall be prima facie evidence of identity." Section 18-1.3-802. However, to prove exact identity, references to the accused's name and

16

date of birth in the judgment of conviction alone are insufficient. *People v. Cooper*, 104 P.3d 307, 312 (Colo. App. 2004).

Here, the prosecution presented sufficient evidence for a reasonable fact finder to determine beyond a reasonable doubt that defendant is the same Juan Velasquez who was convicted of vehicular eluding. The prosecutor presented defendant's properly authenticated Department of Corrections (DOC) records packet, which contained a copy of the vehicular eluding judgment. It listed defendant's name, birth date, and unique inmate identification number. These are the same name, birth date, and inmate identification number that the DOC case manager who supervised defendant for his second degree assault conviction identified at trial as belonging to defendant. The DOC case manager also made an in court identification of defendant as the same Juan Velasquez whose identifying information is contained in the judgment for vehicular eluding. Moreover, the name, birth date, and inmate identification number listed in the vehicular eluding judgment are also listed on three properly authenticated photographs of defendant contained in his DOC records packet and on the three properly authenticated fingerprint cards belonging to defendant that are contained in his DOC records packet. Additionally, we note that the case number for the vehicular eluding conviction (1999CR1735) was imbedded in a number listed on the most recent fingerprint card (D0011999CR001735).

Thus, contrary to defendant's argument, it is of no consequence that the three authenticated DOC photographs and three fingerprint cards did not list the vehicular eluding charge or conviction by name. *See People v. Kyle, supra*, 111 P.3d at 505 (holding evidence sufficient where non-DOC arrest fingerprints, identified as defendant's, listed defendant's date of birth); *People v. Cooper, supra*, 104 P.3d at 310-12 (evidence sufficient where supervising probation office made an in court identification of defendant as same individual listed on documents containing case numbers of previous convictions); *People v. Carrasco*, 85 P.3d 580, 583 (Colo. App. 2003) (evidence sufficient where defendant's arrest record identified him by unique Denver Police Department (DPD) number, and referenced prior convictions by case number, and DPD officer testified defendant's fingerprints matched those on file for same DPD number); *People v. Benton*, 829 P.2d 451, 454 (Colo. App. 1991) (holding evidence of 1982 conviction sufficient without conviction specific fingerprints because defendant's unique inmate identification number was listed on photographs and fingerprint cards made during prior incarcerations).

We also disagree with defendant's contention that the prosecution failed to prove beyond a reasonable doubt that his convictions for first degree criminal trespass and second degree burglary were separate and

distinct criminal episodes. Defendant argues that the fact that the convictions were entered on the same date does not indicate that the two convictions were separate and distinct episodes, and that the only pieces of evidence offered to show that the offenses occurred on separate dates were the judgments of conviction, which, according to defendant, were insufficiently linked to him.

However, contrary to defendant's assertion, these properly authenticated documents were adequately linked to him because they include his name, date of birth, and (despite defendant's incorrect assertion to the contrary) his unique inmate identification number. Furthermore, both judgments of conviction directly reference an identification photograph and fingerprint card in defendant's authenticated DOC records packet. *See People v. Bernabei*, 979 P.2d 26, 31 (Colo. App. 1998) (inferring two felonies were separately brought and tried when document stated that the felonies were committed on separate dates).

*Velasquez*, No. 03CA2449 at 11-16.

The state court's factual findings, which are presumed correct in a federal

habeas proceeding, are supported by the state court record, *Velasquez*, No. 02CR2048,

Nov. 4, 2003 Sentencing Hr'g, and are uncontested by Applicant. The CCA's reliance

on *People v. Barker*, 713 P.2d 406, 407-08 (Colo. App. 1985), and *People v. Kyle*, 111

P.3d 491, 504 (Colo App. 2004), is in keeping with the *Jackson* standard because the

CCA, viewing the evidence in a light most favorable to the prosecution, determined a

conclusion that Applicant beyond a reasonable doubt was the same individual who had

committed the crimes in the prior convictions. The Court therefore finds the CCA's

determination that there was sufficient evidence presented at Applicant's sentencing

hearing to support an habitual criminal adjudication was consistent with federal law.

Based on the above findings, the CCA decision regarding Applicant's sufficiency

of the evidence claim did not result in a decision that was contrary to, or involve an

unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

## D.  Claim Five

In this claim, Applicant asserts that his ninety-six year sentence is disproportionate to the offense he committed.  Application at 7.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  A sentence violates the Eighth Amendment if it is "grossly disproportionate to the severity of the crime."

Although the Supreme Court has admitted there is a lack of clarity regarding what factors may indicate gross disproportionality, the Court has acknowledged that a "gross disproportionality principle is applicable to sentences for terms of years," and "the gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  *See Lockyer v. Andrade*, 538 U.S. 63, 72 and 77 (2003).  The Supreme Court has only twice invalidated a sentence under the Eighth Amendment. *See Weems v. United States*, 217 U.S. 349 (1910) (defendant sentenced to fifteen years in chains and hard labor for falsifying a public document); *Solem v. Helm*, 463 U.S. 277 (1983) (defendant sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check).

Gross proportionality cases also are inherently fact-specific.  *See e.g. Rummel v. Estelle*, 445 U.S. 263, 265-66, 275-76 (1980) (concluding that sentence of life imprisonment with possibility of parole imposed under state recidivist statute did not violate Eighth Amendment, where defendant had two previous felony convictions—one for "fraudulent use of a credit card to obtain $80 in goods or services" and another for "passing a forged check in the amount of $28.36" –and was then convicted of felony theft for "obtaining $120.75 by false pretenses"); *Hutto v. Davis*, 454 U.S. 370 (1982) (upholding against a proportionality attack a sentence of 40 years' imprisonment for possession with intent to distribute nine ounces of marijuana); *Harmelin*, 501 U.S. 957, 994 (1991) (plurality opinion holding that sentence of life imprisonment without parole for first-time offender's possession of 672 grams of cocaine did not violate the Eighth Amendment); *Ewing,* 538 U.S. at 30–31 (upholding against a proportionality attack a twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200); *Lockyer*, 538 U.S. at 77 (upholding on federal habeas review the state appellate court's determination that two consecutive twenty-five-year to life sentences imposed under a state recidivist statute for two counts of petty theft did not violate clearly established Supreme Court Eighth Amendment jurisprudence).

In *Solem*, the Supreme Court instructed the lower courts to consider the following three criteria in analyzing proportionality claims under the Eighth Amendment: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  *Solem*, 463 U.S. at 292.

The Supreme Court revisited the proportionality issue in *Harmelin*.  In a fractured opinion, Justice Kennedy, joined by Justices O'Connor and Souter, wrote separately to argue for the existence of a narrow proportionality guarantee.  *Harmelin*, 501 U.S. at 996 (Kennedy, J., concurring in part and concurring in the judgment).  In reviewing the three-part test articulated by the Court in *Solemn,* Justice Kennedy stated:

> *Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review . . . . A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality     . . . . The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Id*. at 1004–05.  The United States Court of Appeals for the Tenth Circuit has determined that "Justice Kennedy's opinion in *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test."  *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th 1999).

The CCA conducted an abbreviated proportionality review of Applicant's sentence and evaluated (1) the gravity of the crime and (2) the harshness of the penalty, relying on *People v. Gaskins*, 825 P.2d 30, 38 (Colo. 1992) (case relies on *Harmelin* and Solem).  The CCA rejected Applicant's claim that his sentence was grossly disproportionate to his crime based on the following reasoning:

### VI. Sentence Proportionality

Defendant next contends that the trial court violated his Eighth Amendment rights by failing to conduct an extended proportionality review.  We disagree.

Based on defendant's status as an habitual offender, the trial court imposed the statutorily required sentence of ninety-six years.  The court

then conducted a proportionality review.  Finding no inference of gross disproportionality, the court concluded that, although defendant's lengthy criminal history consisted of nonviolent offenses, his conviction in this case was for an extremely violent crime.

Defendant contends that he was entitled to an extended proportionality review because his prior offenses were not grave and serious.  He further argues that, had such an extended review been conducted, his sentence would prove grossly disproportionate in violation of the constitutional guarantee against cruel and unusual punishment.  We disagree.

Sentence proportionality is a question of law subject to de novo review. *People v. McNally*, __ P.3d __ (Colo. App. No. 04CA1654, Dec. 1, 2005).

An extended proportionality review is only necessary when the crimes supporting the habitual sentence are not grave or serious or when the defendant is sentenced to life with no possibility for parole.  *See People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992).  The gravity or seriousness of a crime is determined by considering the harm caused or threatened to the victim or to society and the culpability of the offender. *People v. Deroulet*, 48 P.3d 520, 524 (Colo. 2002). However, some crimes are so inherently grave and serious that they are per se considered facially grave and serious; crimes involving violence or the potential for violence are included in this category.  *See People v. Gaskins, supra*, 825 P.2d at 37.

When only an abbreviated proportionality review is needed, an appellate court is well positioned to conduct the review because there is no need to inquire into the details of the specific offenses or conduct a detailed comparison of sentences.  *See People v. Gaskins, supra*, 825 P.2d at 38.  An abbreviated review consists simply of a scrutiny of the crimes supporting the habitual criminal sentence to determine whether in combination they are so lacking in gravity or seriousness as to suggest that the sentence is constitutionally disproportionate.  *People v. Gaskins, supra*, 825 P.2d at 37.

Here, the triggering offenses of attempted first degree murder, first degree assault, and a crime of violence deadly weapon and serious bodily injury were all inherently violent in nature and, thus, grave and serious. *See People v. Deroulet, supra*, 48 P.3d at 524 (accessory to first degree murder is inherently grave and serious); *People v. Smith*, 848 P.2d 365, 374 (Colo. 1993) (defining first degree murder as a "crime of the utmost gravity"); *People v. Penrod*, 892 P.2d 383, 387 (Colo. App. 1994)

> (concluding first degree assault and attempted second degree murder unquestionably grave and serious).  Furthermore, all but one of defendant's prior offenses were grave and serious.  *See Alvarez v. People*, 797 P.2d 37, 41-42 (Colo. 1990) (first degree criminal trespass is grave and serious); *People v. McNally, supra*, __ P.3d at __ (second degree burglary is grave and serious); *People v. Allen*, 111 P.3d 518, 520 (Colo. App. 2004) (vehicular eluding is grave and serious).
>
> Moreover, defendant's sentences were concurrent and subject to parole, as well as earned time reduction.  Thus, although one of defendant's prior offenses was not grave and serious, in combination the gravity and seriousness of his crimes do not suggest that his statutorily mandated ninety-six-year sentence was grossly disproportionate.  No further proportionality review is required.  *See, e.g., Alvarez v. People, supra*, 797 P.2d at 41 (no further review necessary when there is no inference of disproportionality).

*Velasquez*, No. 03CA2449 at 17-20.

As stated above, the law is clearly established that a gross disproportionality principle is applicable to sentences for terms of years.  *Lockyer*, 538 U.S. at 72.  For purposes of federal habeas review of a proportionality decision, however, there is a lack of "clear objective standards to distinguish between sentences for different terms of years."  *Harmelin*, 501 U.S. at 1001.  The more general the rule the more leeway courts have in case-by-case determinations.  *Richter*, 131 S. Ct. at 786.

The CCA addressed the gravity of Applicant's offense and the harshness of the penalty imposed that are factors relevant to the gross proportionality determination under Supreme Court case law.  *See Ewing*, 538 U.S. 22 (directing the courts to review the gravity of the offense to determine if it matches the severity of the punishment); *Solem*, 463 U.S. at 291-92; *Harmelin*, 501 U.S. at 1002-1004 (Kenney, J., concurring in part and concurring in the judgment) (comparing the gravity of the petitioner's offense to the sentence of life imprisonment without parole).  The CCA's determination that the

offense of attempted first degree murder, first degree assault, and a crime of violence with the use of a deadly weapon and serious bodily injury is a grave and serious crime under Colorado law is not subject to challenge in this federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, the CCA made a reasonable determination that Applicant's sentence was not so harsh as to give rise to an inference of gross disproportionality based on factual findings which are presumed correct in this federal habeas proceeding and are supported by the state court record. Applicant does not point to any clear and convincing evidence to the contrary.

In addition, Applicant's sentence was statutorily mandated. This Court is reluctant to interfere with the legislative determination of an appropriate sentence range. *See Rummel*, 445 U.S. at 275-76 (concluding that length of prison sentences for serious felonies is "properly within the province of legislatures, not courts"); *Harmelin*, 501 U.S. at 998 (same) (citing Rummel). Applicant's sentence also provides opportunity for parole and earned time reduction. *See Rummel* , 445 U.S. at 280-81 (finding it significant that the defendant had the possibility of parole, and concluded that the possibility of parole, however unlikely, distinguished the defendant from someone serving a life sentence without parole). And, finally, Applicant's circumstances do not differ significantly from those in cases where the Supreme Court has rejected Eighth Amendment proportionality challenges. *See, e.g.*, *Harmelin*, 501 U.S. at 994; *Hutto*, 454 U.S. at 375.

A constitutional violation based on the gross proportionality principle is reserved for "only the extraordinary case." *Lockyer*, 538 U.S. at 77.  Furthermore, the CCA's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Based on the above findings, the CCA decision regarding Applicant's proportionality claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

### E.  Claim Six

In this claim, Applicant asserts prosecutorial misconduct took place during closing and rebuttal argument because the prosecution (1) misstated the law concerning the requisite *mens rea* necessary for a conviction of an attempted first degree murder charge; and (2) stated that he believed Applicant was guilty and the jury need to convict Applicant to protect society.  Application at 7.

Habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 645-48 (1974).  In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."  *See Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir.

1998).  The prosecution is forbidden from deliberately deceiving the court and jury.  *See Gray v. Netherland*, 518 U.S. 152, 165 (1996).  Applicant bears the burden of establishing a claim of deception, which the Court reviews *de novo*.  *See Foster v. Ward*, 182 F.3d 1177, 1191-92 (10th Cir. 1999).

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."  *United States v. Young*, 470 U.S. 1, 11 (1985).  The courts must "consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."  *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998), *cert. denied*, 526 U.S. 1025 (1999)).  The federal habeas court does not consider a prosecutor's statement or argument "word by word in a vacuum."  *Paxton v. Ward*, 199 F.3d 1197, 1217 (10th Cir. 1999).

In making this assessment, a court should examine whether "the prosecutor's argument . . . manipulate[d] or misstate[d]" the evidence, whether "it implicate[d] other specific rights of the accused such as the right to counsel or the right to remain silent," whether "the objectionable content was invited by or responsive to the opening summation of the defense," and whether "[t]he weight of the evidence against applicant was heavy."  *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).  "Any cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks," are also relevant.  *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks and citation omitted).  "Inquiry into fundamental fairness requires examination of the entire proceedings," and "[c]ounsel's

failure to object to the comments, while not dispositive, is also relevant to a fundamental

fairness assessment." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citations

omitted and emphasis added).

"[I]t is not enough that the prosecutors' remarks were undesirable or even

universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted).

Rather, "[t]he ultimate question is whether the jury was able to fairly judge the evidence

in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

In addressing this claim, the CCA found as follows:

### V. Prosecutor's Closing Arguments

Although defendant did not object at trial, he now contends that two instances of prosecutorial misconduct during closing and rebuttal closing argument require reversal. We disagree that either comment, or the cumulative effect of both, constitutes plain error.

Allegations of prosecutorial misconduct not objected to at trial are reviewed for plain error, which occurs only when the prosecutor's actions are flagrant or glaringly or egregiously improper, and undermine the fundamental fairness of the trial so as to cast serious doubt on the reliability of the conviction. *People v. Wallace*, 97 P.3d 262, 268-69 (Colo. App. 2004).

Defendant argues that when the prosecutor told the jury that defendant's statement, "I'm going to kill you," constituted deliberation, he misstated the law regarding the requisite mental state for the attempt element of the crime of attempted first degree murder. However, the jury was properly instructed on the element of deliberation, and, properly considered in context, this comment was merely argument by the People that defendant's statements and inferences legitimately drawn therefrom were sufficient to prove the element of deliberation.

Nor did the People's request to the jury to hold defendant "accountable" constitute plain error. Even if improper, the prejudicial effect of the comment was negligible and did not cast doubt upon the reliability of his conviction.

*Velasquez*, No. 03CA2449 at 16-17.

A review of the trial court's alleged error is subject to the plain error test. Colorado's plain error test is rooted in due process. *See People v. Kruse,* 839 P.2d 1, 3 (Colo. 1992) ("Plain error occurs when . . . the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.") (internal quotation marks omitted).  Because there is no practical distinction between Colorado's plain error test and the federal due process test that requires reversal when error "so infused the trial with unfairness as to deny due process of law," *Estelle,* 502 U.S. at 75 (internal quotation marks and citation omitted), the deferential standard of review applies unless the CCA unreasonably applied federal due process law, *see Thornburg v. Mullin ,* 422 F.3d 1113, 1124-25 (10th Cir. 2005) (citing 28 U.S.C. § 2254(d)).

The trial court instructed each of the jurors that the closing arguments are not evidence and they are to determine the facts of the case based solely on the evidence. July 7, 2003 Trial Tr. at 151-52.  Jurors are presumed to follow the instructions given and give less weight to counsel's arguments. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court"). The Court also has reviewed the trial court's instruction on deliberation and finds the instruction was proper.  July 9, 2003 Trial Tr. at 56-57.

Even if the prosecutors' comments were improper, they did not infuse the trial with unfairness and result in a denial of due process of law.  The comments were fleeting, based on argument not evidence, and do not provide a basis for finding the jury was unable to fairly judge the evidence in light of the prosecutors' conduct.  The CCA

decision regarding this claim, therefore, did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim Six, therefore, fails to assert a claim for federal habeas relief and is dismissed for lack of merit.

**F. Claim Seven**

In this Claim, Applicant sets forth five claims of ineffective assistance of trial counsel. Application at 7-8.

It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id*. It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id*.

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In assessing prejudice under

*Strickland* the question is whether it is reasonably likely the result would have been different. *Harrington v. Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792 (citing *Strickland*, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the question asked if the claim came to the court "on direct review of a criminal conviction in a United States district court." *Richter,* 131 S. Ct. at 785. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *Id.* at 698.

The Court will address each of the five ineffective assistance claims as follows.

**1. Coercion to not testify**

In the Court's February 1, 2013 Order, Respondents were directed to brief the substantialness of this claim under *Martinez v. Ryan*, 132 S. Ct. 1309, 1312 (2012). Although Applicant raised a *Martinez* issue in his Reply to the Pre-Answer Response regarding this claim, asserting a basis for procedural default of the claim, he has not replied to Respondents' briefing on the substantialness of the claim.

In *Martinez*, the U.S. Supreme Court held that a "procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320. The narrow exception in *Martinez* to find cause for excusing such a default is based on if

> (1) the ineffective-assistance-of-trial-counsel claim was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that the claim "be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1913 (2013) (quoting *Martinez*, 132 S. Ct. at 1320.) (internal quotation marks omitted).

Respondents assert the trial court gave Applicant a *People v. Curtis*, 681 P.2d 504 (Colo. 1984), advisement instructing Applicant that he had the right to testify or not to testify, that if he chose to remain silent the jury could not use that decision against him, and that he should discuss the decision with trial counsel, but the decision was his personal decision to make. Respondents further assert Applicant told the trial court that he had chosen not to testify and had made the decision freely and voluntarily. A review of the trial court transcript indeed shows that Applicant was given a *Curtis* instruction and he freely and voluntarily chose not to testify. July 9, 2003 Trial Tr. at 25-28. Based on these findings, Respondents conclude that Applicant's claim is without factual support in the record and is insubstantial. Therefore, Applicant has failed to show cause for the default of this claim based on *Martinez*. This claim will be dismissed as procedurally barred from federal habeas review.

**2.  Failure to raise affirmative defense of voluntary intoxication/Failure to conduct reasonable investigation and interview witnesses to support voluntary intoxication defense**

The CCA addressed these issues as follows:

An attorney has a duty to investigate possible defenses or make reasonable determinations not to pursue them.  *See People v. Bergerud*, 223 P.3d 686, 705 (Colo. 2010).  A decision not to investigate certain witnesses does not amount to ineffective assistance of counsel if it is made in the exercise of reasonable professional judgment.  *See People v. Apodaca*, 998 P.2d 25, 29 (Colo. App. 1999).

A defendant may present a voluntary intoxication defense to negate the existence of the specific intent element of the crime charged.  *See* § 18-1-804(1), C.R.S. 2011.  However, pursuing such a defense may be inconsistent with or may potentially undermine a defendant's theory of defense.  *See People v. Villarreal*, 131 P.3d 1119, 1125 (Colo. App. 2005) (where the defendant's defense was that she was not the person who attacked the victim, "[p]roviding the jury with an intoxication instruction would have been inconsistent with, and potentially undermining of, her theory of defense").

Here, the postconviction court found that:

• Trial counsel knew about the intoxication defense and understood the nature of that defense;

• Trial counsel explored with defendant "the collateral consequences of pursuing that defense in terms of diminishing other potential defenses," including self-defense;

• Trial counsel made an informed decision "after investigation had been completed, an investigator had been utilized, numerous witnesses had been interviewed, and discovery had been reviewed"; and

• Trial counsel's decision "was a thoughtful decision made by [him] at the time, after reviewing the evidence, and the legal options available to him, and understanding that the. . . voluntary intoxication defense had limited utility" based on "his experience in hundreds of cases" and could have adversely impacted defendant's pursuit of other defenses.

The court's findings are supported by the record.  At the Crim. P. 35(c) hearing, trial counsel testified that:

> • He had tried more than 300 cases and had dealt with the potential defense of voluntary intoxication many times and the ramifications and subtleties involved with presenting the defense;

> • In his experience, a defendant did not "fare[] well" with intoxication as a defense, even in cases where he put on an expert witness who could testify about the defendant's blood alcohol level;

> • In this case, there was no blood alcohol test to rely upon;

> • Putting on evidence of defendant's intoxication would have opened the door to other bad character evidence;

> • Although trial counsel could not recall exactly why he recommended not to pursue an intoxication defense, he testified that he made the decision and recommended it to defendant, and defendant agreed with the decision;

> • The decision was made after he obtained discovery, interviewed witnesses, and was advised by defendant of "what he would have been consuming that day"; and

> • At trial, he attempted to implicate codefendant in the crime.

It further appears that trial counsel made a reasonable determination not to interview the witness who supposedly could testify to the quantity of alcohol defendant consumed, once the decision had been made not to pursue the defense of voluntary intoxication.

We defer to the postconviction court's findings because they are supported by the record. *See Kyler*, 991 P.2d at 818.  The court's findings support a conclusion that trial counsel made a reasonable and informed strategic decision to forgo the voluntary intoxication defense, he explained the decision to defendant, and defendant agreed with the decision at the time it was made.  Trial counsel reviewed discovery, interviewed witnesses, and knew that defendant had consumed a substantial amount of alcohol that day.  He then relied on his experience of pursuing the intoxication defense in other cases in making a reasonable strategic decision not to pursue it in defendant's case.

While counsel did not interview the potential witness who may have been able to confirm the amount of alcohol defendant had consumed, defendant had told trial counsel what he had drunk and what that witness would likely say. Although trial counsel testified that "[they] did not think [they] would have sufficient evidence to convince a jury regarding intoxication," that statement, alone, does not support a conclusion that trial counsel's decision not to interview the witness constituted deficient performance. Rather, the record as a whole shows that trial counsel relied on (1) his experience that intoxication defenses did not do well even when an expert witness testified about the defendant's blood alcohol level, and (2) the fact that there was no blood alcohol test to rely on in this case. Therefore, we agree with the postconviction court that trial counsel's decision was made with the reasonable understanding that the "voluntary intoxication defense had limited utility."

Further, while counsel did not pursue a self-defense theory at trial, the failure to do so was due to defendant's own conduct. Trial counsel also attempted to implicate codefendant in the crime, which would have been inconsistent with an intoxication defense. *See Villarreal*, 131 P.3d at 1125. Under these circumstances, we conclude that the postconviction court properly determined that trial counsel's performance was not deficient.

Based on our conclusion that trial counsel was not deficient, we need not review defendant's argument that trial counsel's performance prejudiced his defense. *See Karpierz*, 165 P.3d at 759.

*People v. Velasquez*, No. 11CA0450, 5-10 (Colo. App. June 14, 2012).

"The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." *Williamson v. Ward,* 110 F.3d 1508, 1514 (10th Cir. 1997) (internal quotation marks omitted). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (internal quotation marks omitted). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 690-91.

Even if trial counsel was ineffective in not conducting a reasonable investigation and interviewing witnesses that would support a voluntary intoxication defense, Applicant fails to assert how he was prejudiced by trial counsel's conduct. Applicant does not assert what trial counsel would have discovered if he had investigated and interviewed witnesses that would support a voluntary intoxication defense. Moreover, in light of the evidence presented in the state court proceedings, the CCA's determination was reasonable. As a result of the evidentiary hearing held by the Rule 35(c) court, the trial court found that trial counsel reviewed discovery, interviewed witnesses, knew that Applicant had consumed a substantial amount of alcohol, and relied on his experience in pursuing the intoxication defense in other cases in making his strategic decision not to pursue this defense in Applicant's case. The factual findings relied on by the trial court are presumed correct in this federal habeas proceeding and are supported by the state court record. Feb. 11, 2011 Hr'g Tr. At 1-64. Because Applicant does not point to any clear and convincing evidence to the contrary, I find that Applicant has not demonstrated a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Based on the above findings, the CCA decision regarding Applicant's investigation and interview claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and did not result in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

### 3.  Failure to object to prosecution's misstatements of law and misconduct in closing and rebuttal arguments

Applicant asserts that trial counsel was ineffective for not objecting to the

prosecution's closing remarks, which prevented review under the lesser standard of

harmless error rather than plain error on direct appeal.

The CCA addressed this issue as follows:

> 3. Failure to Object to Prosecutor's Closing
>
> Velasquez also contends that counsel's performance at trial was deficient because he failed to object to certain statements by the prosecution during closing argument.  Specifically, Velasquez argues that the prosecution misstated the law by telling the jury Velasquez's alleged statement to the victim, "I'm going to kill you," was sufficient to show he acted after deliberation and that the prosecutor improperly interjected his personal opinion when he urged the jury to hold Velasquez accountable for the victim's injuries.
>
> We note that on direct appeal Velasquez argued that these same remarks were improper and required reversal of his convictions.  Since his trial counsel did not object, the panel reviewed these remarks under the plain error standard.  The panel found the jury was properly instructed on the element of deliberation and it was not improper for the prosecution to argue that the jury could infer from such a statement that Velasquez acted with the requisite deliberation.  In addition, the panel found that even if it were improper for the prosecution to tell the jury Velasquez should be held accountable for his actions, any prejudicial effect from the comment was minimal.
>
> Velasquez now renews these arguments in the context of a claim of ineffective assistance of counsel.  Even if we assume that counsel should have objected to these remarks, to satisfy the second prong of *Strickland* Velasquez must show that such objection would have created a reasonable probability that the outcome of the trial would have been different.  We conclude on the trial record this prong is not met.  We agree with the panel's statement in Velasquez's direct appeal: the jury was properly instructed on deliberation and could properly infer deliberation

from his remark, and the reference to holding him accountable had a
minimal prejudicial effect, if any.

*Velasquez*, No. 07CA1796 at 8-9.

Applicant does not specify in the Application what remarks trial counsel should

have challenged.  In his postconviction motion he asserted ineffective assistance of

counsel because trial counsel failed to object to the same remarks he challenged in his

direct appeal as improper.  As I stated above, the comments were fleeting, based on

argument not evidence, and do not provide a basis for finding the jury was unable to

fairly judge the evidence in light of the prosecutors' conduct.  Therefore, I find that

Applicant was not prejudiced by these remarks.

Based on the above findings, the CCA decision regarding Applicant's closing

remarks claim did not result in a decision that was contrary to, or involve an

unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States and did not result in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

**4. Cumulative error**

The cumulative error doctrine applies only when there are two or more actual

errors, and it does not apply to the accumulation of non-errors.  *Castro v. Ward,* 138

F.3d 810, 832 (10th Cir. 1998).  On federal habeas review, a cumulative error analysis

applies only to cumulative constitutional errors.  *Young v. Sirmons*, 551 F.3d 942, 972

(10th Cir. 2008).  Since none of the ineffective assistance claims have been found to

state a constitutional error, the cumulative error claim will be dismissed for lack of merit.

## G. Claim Eight

In this claim, Applicant asserts that he was denied his right to a jury trial on the habitual criminal counts in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Application at 8. The Court will dismiss this claim for lack of merit. *Apprendi* clearly exempts judicial factfinding regarding prior convictions from the rule that only a jury may constitutionally find facts which increase a defendant's maximum sentence. *United States v. Moore,* 401 F.3d 1220, 1223-24 (10th Cir. 2005); *see also United States v. Delacruz-Soto,* 414 F.3d 1158, 1164 n. 2 (10th Cir. 2005) (noting that *Almendarez-Torres*, 523 U.S. 224 (1998), forecloses argument that a jury, not the sentencing court, must find that defendant had prior convictions). Even though the recidivism exception announced in *Almendarez-Torres*, has been eroded, the Supreme Court has not overruled the exception. *See Moore*, 401 F.3d at 1224.

## IV. Conclusion

For the foregoing reasons, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 6, is **DENIED**. It is

FURTHER ORDERED that I *sua sponte* deny the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a). Having considered the standards of *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), I find that Applicant has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition. 28 U.S.C. § 2253(c)(2). It is

FURTHER ORDERED that I also *sua sponte* certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in*

*forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

   Dated:  February 5, 2014.

                                    BY THE COURT:


                                    /s/ Wiley Y. Daniel
                                    WILEY Y. DANIEL,
                                    SENIOR UNITED STATES DISTRICT JUDGE